UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOMMY MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-411 |
| | ) | (VARLAN/SHIRLEY) |
| HTH COMPANIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This retaliatory discharge action is before the Court on the Motion for Summary

Judgment [Docs. 11] by defendant HTH Companies, Inc. Pursuant to Rule 56 of the Federal

Rules of Civil Procedure, defendant moves the Court for summary judgment in its favor on

plaintiff Tommy Morgan's claim for retaliation and unlawful termination for filing a claim

against defendant for workers' compensation benefits. Plaintiff has responded in opposition

[Docs. 14, 15, 16], and defendant has filed a reply [Docs. 17, 18]. The Court has reviewed

the relevant law, the pending motion, the response and reply briefs, as well as the supporting

documents and exhibits [Docs. 11, 12, 13, 14, 15, 16, 17, 18]. After careful consideration,

and for the reasons stated herein, the Court will **GRANT** defendant's motion, **DISMISS**

plaintiff's complaint, and **CLOSE** this case.

## I.     Facts

Defendant is a company that provides insulation, scaffolding erection, and general

labor for its customers [Doc. 13, ¶ 1; Doc. 15, ¶ 1]. Greg Hoberock ("Hoberock") is the

owner and CEO [Doc. 13, ¶ 3; Doc. 15, ¶ 3]. Hoberock works out of his home office in Missouri [*Id.*]. All work by defendant takes place at its customers' facilities, wherever those may be [Doc. 13, ¶ 2; Doc. 15, ¶ 2]. While Hoberock does not directly manage defendant's job sites, he is involved in decisions to terminate employees [Doc. 13, ¶ 4; Doc. 15, ¶ 4].

Plaintiff was hired by defendant in November 2008 to work at the Tate & Lyle plant, a customer of defendant, in Loudon, Tennessee [Doc. 13, ¶ 7; Doc. 15, ¶ 7]. Among other duties, part of plaintiff's job was to operate a Lull forklift [Doc. 13, ¶ 8; Doc. 15, ¶ 8]. During plaintiff's employment, Chris Wilson ("Wilson") was defendant's acting site superintendent at the Tate & Lye plant [Doc. 13, ¶ 6; Doc. 15, ¶ 6]. Wilson reported to Hoberock [Doc. 12-4, p. 5].

On August 19, 2009, plaintiff was operating a Lull forklift at the Tate & Lyle plant [Doc. 13, ¶¶ 9-10; Doc. 15, ¶¶ 9-10]. The forklift was loaded with scaffolding materials [*Id.*]. As plaintiff was moving the load of materials to another location, he attempted to lift the load over a seven-foot chainlink perimeter fence and onto the ground [Doc. 13, ¶ 11; Doc. 15, ¶ 11]. While plaintiff was in the process of moving the materials, the materials struck a line that transported alcohol [Doc. 13, ¶ 12; Doc. 15, ¶ 12]. The line broke open and alcohol sprayed out, resulting in the release of approximately 300 gallons of alcohol [Doc. 13, ¶ 13; Doc. 15, ¶ 13; Doc. 12-3, pp. 6-8]. A spill of this type was a serious situation and carried the potential for an explosion which could cause the deaths of workers at the plant [Doc. 12-3, pp. 6-8]. Tate & Lyle immediately implemented emergency cleanup measures [*Id.*, pp. 7, 19].

2

According to a report issued by Tate & Lyle shortly after the incident, the company quickly determined that plaintiff was the cause of the incident [*Id.*, pp. 19-21]. Less than an hour after the incident, Tate & Lyle advised Wilson that it did not want plaintiff to operate any more machinery at the Tate & Lyle plant [Doc. 13, ¶ 15; Doc. 15, ¶ 15]. Wilson called Hoberock and advised him of the details of the incident and of Tate & Lyle's request that plaintiff no longer operate machinery [Doc. 13, ¶ 16; Doc. 15, ¶ 16]. "[W]ithin an hour" of the incident, Wilson informed plaintiff that his employment was terminated [Doc. 13, ¶ 18; Doc. 15, ¶ 18; Doc. 12-3, p. 7]. According to the report issued after the spill, Tate & Lyle performed an investigation of the spill and found that "the cause of the incident was improper movement of scaffolding materials which struck a process line, breaking off a low-point drain valve and nipple." [Doc. 13, ¶ 14; Doc. 15, ¶ 14; Doc. 12-3, pp. 19-21].

Prior to plaintiff's termination, he asserts that he told Wilson "time and time again" about a neck injury which caused him pain [Doc. 15, ¶ 19; Doc. 16-1, pp. 2-8]. Plaintiff asserts that he told Wilson that the incident giving rise to his neck injury occurred at one of defendant's work sites as plaintiff was helping disassemble scaffolding [Doc. 15, ¶ 19; Doc. 16-1, pp. 2-8]. Plaintiff submits that while he did not immediately know the cause of the injury, and at first suspected that it had to do with lifting weights, the day after he disassembled the scaffolding he began to feel pain in his shoulder [Doc. 15, ¶ 19; Doc. 16-1, pp. 5-8]. At some point, plaintiff described his neck pain to his foreman, Rob Henson ("Henson") [*Id.*]. A few days after he began to feel pain, plaintiff visited his private physician, Dr. Peter Stimpson ("Dr. Stimpson"), who advised plaintiff that his injury was

3

work-related and that he should file a workers' compensation claim [Doc. 16-1, pp. 10-16]. Plaintiff asserts that when he returned to work, he told Wilson about his neck injury and pain, including his belief that the injury was work-related [*Id.*]. Plaintiff asserts that both Wilson and Henson told plaintiff it was almost impossible to obtain workers' compensation since plaintiff had not filed a claim at the time of his injury or when he first reported the injury [*Id.*, p. 10]. Plaintiff asserts that after he told Wilson about his injury, Wilson was a "little bit more visible" and began showing up more often at job sites [*Id.*, pp. 24-27].

Defendant agrees that plaintiff told Wilson that his neck was hurting sometime prior to his termination. Defendant asserts, however, that plaintiff did not repeatedly tell Wilson about his injury and did not tell Wilson the injury was work-related. Rather, defendant asserts that plaintiff told Wilson that the injury was not a big deal and that it was not work-related [Doc. 12-2, ¶ 4]. It is undisputed, however, that neither plaintiff nor Wilson told Hoberock about plaintiff's neck injury or pain [Doc. 13, ¶¶ 20, 21; Doc. 15, ¶¶ 20, 21]. Therefore, at the time of plaintiff's termination, it is undisputed that Hoberock knew nothing about plaintiff's neck injury or any report, claim, or complaint plaintiff might have made [Doc. 13, ¶ 23; Doc. 15, ¶ 23].

On May 19, 2010, almost a year after plaintiff's termination, plaintiff filed a request for assistance with workers' compensation benefits with the Tennessee Department of Labor [Doc. 13, ¶ 22; Doc. 15, ¶ 22]. In August 2010, plaintiff filed the complaint in state court, asserting that he was retaliated against and terminated for filing a workers' compensation

4

claim [Doc. 1-1].  Defendant removed the case to this Court, pursuant to 28 U.S.C. §1332

and § 1441 [Doc. 1], and filed the instant motion for summary judgment [Doc. 11].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper

"if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears

the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th

Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light

most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the

nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through*

*Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*,

477 U.S. at 317).  To establish a genuine issue as to the existence of a particular element, the

non-moving party must point to evidence in the record upon which a reasonable finder of fact

could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

genuine issue must also be material; that is, it must involve facts that might affect the

outcome of the suit under the governing law.  *Id.*

The Court's function at the point of summary judgment is limited to determining

whether sufficient evidence has been presented to make the issue of fact a proper question

for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

Defendant asserts that plaintiff cannot establish a prima facie case of retaliatory discharge for filing a workers' compensation claim because plaintiff never made a claim for workers' compensation benefits. Even if plaintiff did make such a claim, defendant asserts that plaintiff's prima facie case still fails because he cannot show that any claim was a substantial factor in defendant's decision to terminate his employment. Defendant also asserts that even if plaintiff can establish a prima facie case of retaliatory discharge, plaintiff cannot demonstrate that defendant's reason for his termination—the alcohol spill incident and Tate & Lyle's request that plaintiff no longer operate machinery at the Tate & Lyle plant—were pretextual.

Plaintiff argues that summary judgment is inappropriate because he had made a claim for workers' compensation benefits at the time of his termination, because his claim was a substantial factor in defendant's decision to terminate him, and because defendant's reasons for the termination decision were pretextual.

6

## A. The Decision-Maker in Regard to Plaintiff's Termination

The Court will first address the issue of who made the decision to terminate plaintiff. Defendant asserts that after Wilson related the news about the incident and Tate & Lyle's position that plaintiff no longer operate machinery at the plant to Hoberock, Hoberock made the decision to terminate plaintiff and instructed Wilson to convey that decision to plaintiff [Doc. 13, ¶ 17; Doc. 12-4, p. 3; Doc. 12-2, ¶¶ 6-7; Doc. 12-3, pp. 9-10]. Plaintiff, on the other hand, asserts in his response brief that there is a genuine issue of material fact as to whether Wilson, and not Hoberock, was the decision-maker in regard to plaintiff's termination [Doc. 16, p. 12]. As support, plaintiff points to defendant's response to interrogatory #8 of plaintiff's first set of interrogatories [Doc. 16-2, p. 4]. Plaintiff's interrogatory #8, and defendant's response, are as follows:

> 8.  With respect to each person with the Defendant-Employer who made any formal determination to discharge the Plaintiff from the Defendant-Employer's employment, (or otherwise involuntarily terminate or suspend the Plaintiff's employment), state: (a) the individual's name; (b) the individual's position; and (c) the date such determination was made.

> **Response:**

> Chris Wilson, former Acting Site Superintendent at Tate & Lyle plant in Loudon, Tennessee. The decision to terminate Plaintiff was made on August 19, 2009, after Tate & Lyle advised Mr. Wilson that the Plaintiff was banned from working at the Tate & Lyle plant.

7

[*Id.*]. Given this response, plaintiff asserts that defendant has created a genuine issue of fact regarding whether Wilson, and not Hoberock, was the individual who made the decision to terminate plaintiff's employment [Doc. 15, ¶ 17].

Defendant counters that notwithstanding its "inartfully drafted" response to plaintiff's interrogatory #8, the undisputed facts and evidence show that Hoberock, not Wilson, made the decision to terminate plaintiff, a decision which Wilson only conveyed to plaintiff. Defendant points out that according to plaintiff's deposition testimony, Hoberock's deposition testimony, and Wilson's declaration, Hoberock made the decision to terminate plaintiff [Doc. 12-4, p. 3; Doc. 12-2, ¶¶ 6-7; Doc. 12-3, pp. 9-10]. Defendant asserts that although Hoberock's name was inadvertently omitted from defendant's response, plaintiff has pointed to no other evidence that anyone other than Hoberock was the decision-maker in regard to plaintiff's termination.

Upon review of the evidence and argument, the Court finds that the evidence does not show a genuine issue of disputed material fact as to whether Hoberock made the decision to terminate plaintiff.

Hoberock testified that he made the decision to terminate plaintiff after being told by Wilson of the incident and that Tate & Lyle no longer wanted plaintiff to operate machinery at the plant [Doc. 12-4, p. 3]. Similarly, Wilson stated in his declaration that the decision to terminate plaintiff was made by Hoberock and that this decision was communicated to him with instructions to tell plaintiff [Doc. 12-2, ¶¶ 6-7]. Plaintiff has also not disputed defendant's assertion that, as CEO and owner, Hoberock was involved in termination

8

decisions regarding defendant's employees [Doc. 13, ¶ 4; Doc. 15, ¶ 4]. Plaintiff's own

deposition testimony also shows that plaintiff believes Hoberock, not Wilson, made the

decision to terminate him, a decision that was communicated to plaintiff by Wilson.[1] Finally,

while defendant's response to plaintiff's interrogatory #8, when considered by itself, states

that Wilson was involved in the "formal determination to discharge the Plaintiff[,]" this

response does not contradict the other deposition testimony from both Hoberock and plaintiff

---

[1]A relevant part of plaintiff's deposition testimony is excerpted below:

Q.   Let's go back to the conversation that you had with [Wilson] in [defendant's] trailer[.] . . . within hours of the alcohol spill?

A.   Yes.

Q.   Was it shorter than that?

A.   I would have to say it was within the hour that I was terminated.

Q.   Okay. And I know you told me that [Wilson] was upset and was raising his voice and calling your names. Did he tell you why he was terminating you?

A.   He told me that the owner of [defendant] wanted me terminated.

Q.   Okay.

A.   Said he got off the phone with him and he wanted me terminated.

Q.   Okay, Who's the owner of [defendant]?

A.   Hoberock or something like that?

. . . .

Q.   Okay. So according to you . . . Wilson told you that the owner of [defendant] told him that he wanted you terminated?

A.   Yes.

9

in which each state that Hoberock made the termination decision.  Thus, the Court does not

find defendant's response to raise a genuine issue of disputed fact as to who made the

decision to terminate plaintiff, given the subsequent deposition testimony of plaintiff and

Hoberock, during which details of plaintiff's termination were discussed in far more detail,

the declaration of Wilson, and the absence of any other evidence to indicate that Wilson

made the termination decision.

### B.      Prima Facie Case for Retaliatory Discharge

In Tennessee, an employee who asserts a claim for retaliatory discharge for filing a

workers' compensation claim has the burden of establishing four prima facie elements: (1)

that he or she was an employee at the time of the injury; (2) that he or she made a claim

against the employer for workers' compensation benefits; (3) that the employee's

employment was terminated; and (4) that the claim for workers' compensation was a

substantial factor in the employer's decision to discharge the employee from his employment.

*See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993).  At issue in

this case is whether plaintiff has established the second and fourth element.

### 1.      A Claim Against the Employer

The Tennessee Court of Appeals has stated that the second requirement of the prima

facie case, the requirement that an employee make a claim against the employer for benefits,

was intended to be "flexible" and that Tennessee courts do "not define the exact steps an

employee must take in order to be deemed to have 'sought workers' compensation benefits'

for purposes of a retaliatory discharge action" because in doing so an employer "might be

10

tempted to evade the law by obstructive tactics or by discharging [the employee] before [he] can take any specific steps." *Elliott v. Blakeford at Green Hills*, No. M2000-00365-COA-R3-CV, 2000 WL 1817228, at \*4 (Tenn. Ct. App. Dec. 13, 2000). Because Tennessee law places an affirmative duty on an employer with knowledge of a possible compensatory injury to furnish necessary treatment, free of charge, *see* Tenn. Code Ann. § 50-6-204(a)(1), "[o]ne step which is not essential to pursuing a retaliatory discharge claim is that an actual claim already be filed[.]" *Woodard v. Morgan Tire & Auto, Inc.*, No. 3:05-0681, 2006 WL 2850323, at \*6 (M.D. Tenn. Oct. 2, 2006) (citing *Elliott*, 2000 WL 1817228, at \*4).

Both plaintiff and defendant, albeit to different ends, compare the facts of *Elliott* to the facts of this case. In *Elliott*, the plaintiff, a director of food services for her employer, a retirement home, suffered a work-related injury to her hand. *Id.*, 2000 WL 1817228, at \*1. The plaintiff went to the on-site infirmary and told the duty nurse she had injured her hand on the job. *Id.* The nurse directed her to seek medical attention. *Id.* After calling her personal physician to make an appointment, the plaintiff told the executive director of the retirement home that she "hurt my hand in the kitchen" and that she was leaving work to seek medical attention. *Id.* The executive director said nothing in response. *Id.* After being told that her injury required surgery, the plaintiff related her diagnosis and the necessity for surgery to the executive director. *Id.* at \*2. She also asked if her medical insurance with the retirement home would cover the cost of surgery. *Id.* The executive director told the plaintiff she had no insurance coverage available through the retirement home, but he suggested she obtain insurance through her former employer. *Id.* The plaintiff did so and

11

continued to work until the day of her surgery. *Id.* After the surgery, the plaintiff returned to work in a cast. *Id.* About two weeks later, the executive director told the plaintiff she needed to fill out a letter of resignation because it seemed she could not do her job after the surgery. *Id.* After the plaintiff realized she was being fired, she asked the executive director about workers' compensation benefits. *Id.* Several days later, the plaintiff filled out a report of injury, a necessary step in filing a workers' compensation claim. *Id.*

On appeal, the retirement home argued that because the plaintiff had not mentioned workers' compensation until after she understood she was being terminated, she had failed to satisfy the second element of the prima facie case. *Id.* at *5. The court of appeals rejected this argument, finding that the plaintiff's notification, on at least three occasions, to the executive director of her work-related injury, her statements to the executive director that she needed medical attention, and her questions about the availability of insurance coverage, gave the executive director, and therefore the retirement home, notice that the plaintiff had a claim for workers' compensation benefits. *Id.* at *4-*5. *See also Woodard*, 2006 WL 2850323, at *6 - *7 (finding that a claim was made when the employer knew the employee was injured at work, the employee spoke with a manager about workers' compensation and to someone the employee believed to be in higher management, and the manager passed information regarding the employee's accident and injury to higher management); *Whirlpool v. Pratt*, No. M2007-02534-COA-R3-CV, 2008 WL 4615709, at *1-*4 (Tenn. Ct. App. Oct. 17, 2008) (finding that a claim was made when the employer knew the employee had been injured at work, the employee inquired about workers' compensation coverage the day after

12

the injury, and, three days after the injury, the employer filed a reverse petition seeking to determine the rights and responsibilities of the parties under workers' compensation statues).

Turning to the facts of this case, plaintiff and defendant agree that filing a formal workers' compensation claim or initiating formal proceedings are not required in order for an employee to have made a "claim for benefits." Plaintiff and defendant also agree that an employer's knowledge or notice of the specific facts and circumstances indicating that a workers' compensation claim would be forthcoming, prior to the employee's termination, is necessary for an employee to be deemed to have made a "claim for benefits." Furthermore, it is undisputed that Hoberock did not know about plaintiff's injury or plaintiff's complaints about neck pain prior to plaintiff's termination. It is also undisputed that plaintiff did not file or make a formal claim for workers' compensation benefits prior to his termination, and undisputed that plaintiff did not take any steps to bring a formal workers' compensation claim until almost a year after his termination. Thus, the crux of whether plaintiff has established the second element of his prima facie case rests on defendant's knowledge or notice of plaintiff's neck injury.

Viewing the facts in the light most favorable to plaintiff, if the person making the termination decision was Wilson, than plaintiff may have established the second element because it is undisputed that Wilson knew of plaintiff's neck injury. If, on the other hand, the person making the termination decision was Hoberock, whom the parties agree did not have notice or knowledge of plaintiff's neck injury, plaintiff will not have established the second element of his prima facie case. In light of the Court's prior determination that there

13

is no genuine issue of fact that Hoberock made the termination decision, and having no other evidence to indicate knowledge or notice of plaintiff's neck injury on the part of a decision-maker for plaintiff's termination, the Court concludes that plaintiff has failed to establish the second element of his prima facie case.

In addition to Hoberock's lack of notice or knowledge regarding plaintiff's neck injury, there is no allegation or evidence that Wilson, Henson, or told anyone else told Hoberock about plaintiff's injury. Plaintiff did not have surgery or take time off from work to seek medical attention, and plaintiff's diagnosis came from a private physician, not a company nurse or doctor. Plaintiff also did not work with special accommodations in light of his injury, a circumstance which might indicate that he was injured. Moreover, plaintiff did not tell Hoberock about his neck injury and did not ask Hoberock about medical insurance coverage or workers' compensation. Finally, plaintiff did not formally seek workers' compensation benefits until almost a year after his termination [Doc. 12-3, pp. 3-4, 12-14]. The Court also finds the facts of this case distinguishable from *Elliott* because that plaintiff's injury was undisputably work-related and the employer knew of the injury, knew that the plaintiff was seeking medical attention, and knew that the plaintiff had requested information regarding health insurance coverage. The facts of this case are also distinguishable from *Woodard*, in which the plaintiff told a manager about her work-related injury and the manager conveyed information regarding the injury to the relevant decision makers, and from *Whirlpool*, in which the plaintiff asked the employee for workers'

14

compensation coverage and the employer filed suit three days after the plaintiff's accident to determine its rights under workers' compensation laws.

Accordingly, in light of the foregoing, the Court finds that plaintiff has not established that he made a "claim for benefits" against defendant.

## 2. The Substantial Factor Requirement

In order to meet the substantial factor requirement, the fourth element of the prima facie case, a plaintiff must show either direct or "compelling circumstantial" evidence of a causal connection between his workers' compensation claim and his termination, not just the fact that the latter followed the former. *Cooper v. Wyndam Vacation Resorts, Inc.*, 570 F. Supp. 2d 981, 985 (M.D Tenn. 2008) (citing *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773 (Tenn. Ct. App. May 15, 2006) (citation omitted)). Because plaintiff has provided no direct evidence of retaliation, he must bring forth compelling circumstantial evidence to show that his claim for benefits was a substantial factor in his termination.[2]

Plaintiff argues that he has presented compelling circumstantial evidence that his claim for workers' compensation benefits was a substantial factor in defendant's decision to terminate his employment. He asserts that following his reports to Wilson about his neck

---

[2]Because the test for establishing a prima facie case of retaliation is phrased in the conjunctive, all four elements of the test must be satisfied. Plaintiff has thus failed to set forth a prima facie case against defendant because he failed to establish the second element. However, for purposes of a complete analysis, the Court will assume, in the course of analyzing the fourth element of plaintiff's prima facie case, that plaintiff has established the second.

15

injury, Wilson began showing up at job sites more frequently. Plaintiff also asserts that his

termination came less than one month after he first reported his injury to Wilson

Courts have consistently held that temporal proximity between the claim and the

termination is not by itself sufficient. *Cooper*, 570 F. Supp. 2d at 985-86; *see, e.g., Conaster*

*v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (holding that the

fact that the plaintiff was fired three days after returning to work upon being out for two

weeks because of a compensated injury was not sufficient evidence of a causal connection).

However, "temporal proximity plus other circumstantial evidence of causation" can present

a prima facie case for retaliation. *Craig v. Porter Cable/Delta*, No. 1:05-1018-T-An, 2006

WL 1006857 (W.D. Tenn. Apr. 17, 2006). In *Newcomb v. Kohler Co.*, the Tennessee Court

of Appeals identified a number of factors that, along with temporal proximity, could present

sufficient circumstantial evidence of causation, including:

> [T]he expression of a negative attitude by the employer toward an
> employee's injury, the employer's failure to adhere to established
> company policy, discriminatory treatment when compared to similarly
> situated employees, [or] sudden and marked changes in an employee's
> performance evaluations after a worker's compensation claim, or
> evidence tending to show that the stated reason for discharge was false.

222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) (citing *Flint Constr. Co. v. Hall*, 904 So.2d 236,

248 (Ala. 2004)). However, [a] plaintiff's subjective beliefs, mere speculation, or testimony

that the employee can think of no other reason for the discharge cannot, in an of themselves,

create the requisite casual connection." *Id.* (citing *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d

677, 685 (Tenn. Ct. App. 1999) (finding insufficient, for purposes of summary judgment, the

plaintiff's testimony that she "believe[d] in [her] heart" that she was fired for filing a workers' compensation claim)).

Plaintiff's assertion that Wilson showed up more frequently at job sites after plaintiff complained of his neck injury is not, by itself, sufficient circumstantial evidence of a change in attitude towards plaintiff, one of the factors noted in *Newcomb*. Plaintiff has not linked Wilson's more frequent showing up at job sites to any other circumstantial evidence that these more frequent visits were due to plaintiff's report of a neck injury, or that Wilson did anything negative or discriminatory towards plaintiff during these visits or his other encounters with plaintiff. Furthermore, plaintiff has neither alleged nor provided evidence as to how frequently these visits were compared to Wilson's visits prior to plaintiff's complaint of injury, or whether this treatment of plaintiff differed from Wilson's treatment of other similarly situated employees. While plaintiff asserts that the one-month period of time between his complaint to Wilson and his termination is evidence of causation, without any other circumstantial evidence, the Court also finds this insufficient to show causation. Moreover, the Court notes that plaintiff's subjective belief and speculation that his injury was the reason for his termination does not, in and of itself, defeat summary judgment. In sum, plaintiff has not established the fourth element of his prima facie case because he has not presented evidence of causation that is sufficiently compelling to support an inference of retaliation.

17

## C. Defendant's Legitimate, Non-discriminatory Reason and Pretext

If an employee makes a prima facie case of retaliatory discharge by proving a causal link between a workers' compensation claim and the employee's discharge, the burden of proof shifts to the defendant employer to show "a legitimate, non-pretextual reason for the employee's discharge." *Anderson*, 857 S.W.2d at 559.[3] If the employer presents such a reason, the burden shifts back to the employee to prove that the employer's explanation is pretextual. In doing so, the employee "must present specific admissible facts which realistically challenge the defendants' stated reasons." *Hubrig v. Lockheed Martin Energy Sys.*, No. 03A01-9711-CV-00525, 1998 WL 240128, at *8 (Tenn. Ct. App. May 4, 1998). The employee may challenge the stated reason and thereby create a question of fact as to a pretextual defense by showing the employer's reasons "have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge." *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001) (quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329-30 (6th Cir. 1994) (internal citations omitted)).

---

[3]In *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court called into question the continued application of the *McDonnell Douglas* burden-shifting framework in state retaliation claims. However, in *Moline v. O'Reilly Auto., Inc.*, — F. Supp. 2d —, —, No. 09-1100, 2011 WL 112586 (W.D. Tenn. Jan. 13, 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliation claim using the *McDonnell Douglas* framework. This Court will apply the same burden-shifting analysis. Furthermore, even if *Gossett* was applied, the result would be no different as the Court has determined that plaintiff has failed to establish a prima facie case.

The Court has already determined that plaintiff has not established a prima facie case of retaliation. However, assuming that he has, defendant has stated a legitimate, non-discriminatory reason for his termination. Specifically, that after the alcohol spill incident, Tate & Lyle advised Wilson that they did not want plaintiff operating any more machinery at the plant, information which Wilson conveyed to Hoberock and information upon which Hoberock based the termination decision. As Hoberock testified at his deposition, he believed "there was really not much choice left" but to terminate plaintiff [Doc. 12-4, p. 3]. Furthermore, a subsequent investigation by Tate & Lyle determined that plaintiff's "improper movement of scaffolding materials" caused the spill [Doc. 12-3, pp. 19-21].

As to pretext, plaintiff argues that the fact that he was terminated less than an hour after the incident, even though he had no prior disciplinary history, supports an inference that defendant was eager to terminate plaintiff. Plaintiff also argues that he was following all safety instructions and his flagman's instructions at the time of the incident, and that no other employees were terminated because of the incident, "[d]espite the strong indications of fault on the part of the 'flagman[.]'" [Doc. 16, p. 11].

The Court finds these arguments and evidence insufficient to establish pretext. Plaintiff has not disputed that he was operating the forklift, that he was responsible for the operation of the forklift, that the alcohol spill occurred and its significance, that Tate & Lyle found him to be at fault in a subsequent incident report, and that Tate & Lyle communicated to Wilson that it did not want plaintiff operating machinery at the plant in the future. Plaintiff has also submitted no evidence, beyond his deposition testimony, that Tate & Lyle's

19

determination as to who was at fault or responsible for the spill had no basis in fact. Furthermore, plaintiff has not argued that Hoberock's knowledge of the fact that Tate & Lyle no longer wanted plaintiff to operate machinery at the plant was an insufficient basis for Hoberock's termination decision. Moreover, besides suggesting that a "flagman" was also at fault for the spill and was not terminated, plaintiff has provided no specific details regarding this "flagman," such as his responsibilities for the operation of the forklift or whether he was similarly situated to plaintiff.

## IV.     Conclusion

For the reasons stated above, and because plaintiff has not established a prima facie case of retaliatory discharge for filing a workers' compensation claim for benefits, defendant's Motion for Summary Judgment [Doc. 11] will be **GRANTED** and plaintiff's complaint will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE